UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

RICHARD RIDER III,

Index No.:2:17 –CV-02583

Plaintiff,

-against-

NASSAU COUNTY, NASSAU COUNTY POLICE
DEPARTMENT and NASSAU COUNTY
CORRECTIONAL CENTER, OFFICER JOHN DOE ONE,
Individually, OFFICER JOHN DOE TWO, individually,

Defendants.

------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO COUNTY DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Green Durcan & Weiner, PLLC
By: Jeffrey K. Weiner
*Attorney for Plaintiff*
72 Guy Lombardo Avenue
Freeport, NY 11520

Defendants assert that Richard Rider's, hereinafter ("Plaintiff") complaint must be dismissed because it, "lacks any specific factual allegations regarding the personal or direct involvement of any individual officers."

While Defendants Memorandum of Law states that it is a motion for summary judgment, Defendants appear to be making a motion to dismiss pursuant to Federal Rules of Civil Procedure, ("FRCP") 12(b)(6)" failure to state a claim upon which relief can be granted." In Defendants' argument they state that Plaintiff's complaint failed to show that. "(1) the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."

FRCP 8 (a)(2) requires. "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff has met that burden. Plaintiff's complaint states that, "(A)ll individual officer were acting under the color of state law in their capacity as Nassau County police officers and their acts or omissions were conducted under the scope of their official duties or employment." **Ex 1, ¶ 66.**

Plaintiff alleges that both officers John Doe 1 and John Doe 2 were employed by Defendant Nassau County and/or Nassau County Police Department. **Ex 1, ¶ 32, 33.**

Plaintiff's Complaint further alleges sufficient facts as to the actions taken by Officers John Doe 1 and John 2 which led to his injuries. Plaintiff was shoved to the ground and maced in the face. He was held face down in the snow, punched in his neck and head and kneed in the back all while being restrained. **Ex 1, ¶ 6, 71, 77.** These facts alone demonstrate the personal involvement of both officers.

Defendants' claim that Plaintiff's Complaint failed to identify a specific constitutional right is also without merit.

Here, Plaintiff's Complaint alleges that he had a right under the Fourth Amendment of the Constitution as well as 42 U.S.C. § 1983to be secure in his person from unreasonable seizure through excessive force. **Ex 1, ¶ 67, 64.**  Plaintiff also alleges that the officers' action were objectively unreasonable pursuant to the Fourth Amendment to the U.S. Constitution. Ex 1, ¶ 72.

Since Plaintiff's Complaint identifies that officers from the Nassau County Police Department violated his Constructional rights pursuant to the Fourth Amendment to the U.S. Constitution and pursuant to the laws of the United States under 42 U.S.C. § 1983 by alleging facts supportive of excessive force during his arrest this case should not be dismissed pursuant to FRCP 12(b)(6)" failure to state a claim upon which relief can be granted.

## PLAINTIFF SHOULD BE ALLOWED TO MAKE A MOTION TOAMEND THE COMPLAINT  WITH RESPECT TO ADDING THE NAMES OF THE OFFICERS INVOLVED

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff  Amended Complaint maintains the same counts and allegations against the same defendants from the Complaint, but includes new facts that have come to light since Plaintiffs filed their Complaint as well as facts not previously included.  Accordingly, Plaintiffs seek leave to amend their Complaint, which should be granted for the reasons set forth below.

### ARGUMENT

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  "The Second Circuit held that a Rule 15(a) motion 'should be denied only for such reasons as undue delay,

2

bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Aetna Cas. & Sur. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (quoting *Richardson Greenshield Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987). This Court should allow Plaintiff to move to amend their complaint because there has not been undue delay, the amendments are based on good faith, the amendments would not be futile, and there will not be prejudice to Defendants.

1. <u>Plaintiffs Are Entitled to Amend Their Complaint Because There Has Not Been Undue Delay.</u>

Plaintiffs have not unduly delayed bringing a Motion to amend their Complaint. Because Rule 15(a)(2) encourages the court to "freely give leave when justice so requires," mere delay in amending a pleading does not provide a basis for denying the right to amend unless there is also a showing of bad faith or undue prejudice. *See State Teachers Ret. Bd. V. Fluor Corp.*, 654 F.2d 843, 956 (2d Cir. 1981). The Second Circuit has identified several factors to be weighed when making a determination of undue delay. One factor is whether the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Two other factors are whether the amendment is proposed on the eve of trial, or the moving party waited until the court dismissed the complaint before proposing the amendment. *See or Corp.*, 654 F.2d at 856; *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008).

None of the above considerations would implicated by Plaintiff making a Motion to Amend. Admittedly, this case has been pending for five years, but there was little discovery conducted by defendants or plaintiff and no trial has been scheduled. Importantly, this Court has not yet rendered a decision concerning Defendants' Motion to for Summary Judgment.

3

Plaintiff would only seek to amend its complaint to add the names of the officers initially named as Officers John Doe one and two and its Monell claims.    Therefore, the proposed amendments would not risk unduly increasing discovery or trial preparation, or delaying a resolution in this case.  As, such this Court should deny Defendants' motion prevent Plaintiff from seeking leave to amend their Complaint so Plaintiff's claim can be adjudicated on the merits.

2.  <u>Plaintiffs Are Entitled to Amend Their Complaint Because Their Amendments Would be Made in Good Faith.</u>

Plaintiffs are not seeking to amend their Complaint in bad faith.  While Rule 15(a)(2) encourages courts to "freely give leave [to amend] when justice so requires," there should still be an absence of "bad faith or dilatory motive on the part of the movant." *See Foman*, 371 U.S. at 182.  Plaintiffs move to include new facts in their Complaint solely to provide this Court and Defendants with greater specificity of Plaintiff's Monell claims and to alter the caption to include the names of the NCPD officers alleged to have acted with excessive force in arresting Plaintiff. <u>Plaintiffs Are Entitled to Seek Leave to Amend Their Complaint Because Their Amendments Would Not Be Futile.</u>

Plaintiffs seek to include additional facts that will clarify the issues in this case.  First to clarify its Monell claims which were alleged in its complaint. **Ex 1, ¶ 80, ¶'s 102-117.**  Second to change the names of the Officers in the caption

The U.S. Supreme Court has held that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper source of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Defendants' Motion for Summary Judgment does not challenge Plaintiff's' claims against the two Police Officers in

their individual capacity or for Deliberate indifference to Plaintiff's medical needs. Holding all

Defendants liable is essential to Plaintiffs claim for monetary damages. This Court should find

that Plaintiff's claims, if proven, have merit, and grant Plaintiffs leave to amend their Complaint.

3. <u>Plaintiffs Are Entitled to Amend Their Complaint Because Defendants Will Not Be Prejudiced.</u>

Plaintiffs' proposed amendments do not risk prejudicing Defendants. The Second Circuit

held that prejudice to a defendant occurs where a motion is made after discovery has concluded,

when a summary judgment motion has been made, or when the amendments come years after the

original complaint. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

While any motion to amend would be made after Defendants have made a motion for Summary

judgment it is not clear that all claims would be dismissed if Defendants' motion was granted.

Again, while discovery has been concluded, there would only be minimal discovery on the

Monell claims and little or none with respect to changing the names of the Officers in the

caption. Plaintiff's motion to amend does not raise any new legal claims or seek to join new

defendants to this action. Because Defendants would not be prejudiced by the amendments to

Plaintiff's Complaint, this Court should grant Plaintiffs leave to amend their Complaint.

<u>Plaintiff's Claim Against Nassau County for Deliberate Indifference to his Medical Needs Should be Allowed to Proceed.</u>

The failure of the Nassau County Correctional Center medical staff to provide proper

medical care was not an isolated incident and was due to inadequate supervision of medical staff

by officials of that department and that lack of supervision infers a policy that supports an

acquiescence of unconstitutional conduct.

"In order to establish Monell liability based upon a "persistent and widespread" practice by a subordinate municipal employee (or employees) other than a policymaker, the employee's unconstitutional conduct must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284 (2nd Cir. 2020).

Plaintiff's complaint contains numerous allegations of instances where the medical program lacked the proper supervision, improper background checks and a failure to keep proper medical records in compliance with federal guidelines. **Ex 1, ¶ 117.**  Specifically, the medical provider did not have a medical professional on staff to oversee medical operation in violation of their contract with the Correctional Center.  Additionally there was no physician employed by the County which was contrary to NYS Correctional Law. **Ex 1, ¶ 117.**

Furthermore, Armor the medical provider for the Correctional Center did not have a Health Contract Administrator.  This resulted in the Correctional Center failing to assess performance indicators and to assess penalties for failing to obtain the proper accreditation. **Ex 1, ¶ 117.**

The medical provider for the Correctional Center also failed to document required employee background checks that were performed for employees cleared for hire and they could only provide references for 38% of selected employees. **Ex 1, ¶ 117.**

If these allegations are proved at trial, through the testimony of witnesses, a jury could find that the inadequate medical treatment Plaintiff received was inadequate in violation of his rights under the 14th amendment to the constitution and that these practices were widespread and persistent in satisfaction of his Monell claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

motion and allow Plaintiff leave to make a motion to amend its complaint.

Dated: Freeport, New York
      November 15, 2021

                              Respectfully submitted,

                              Jeffrey K. Weiner
**GREEN DURCAN & WEINER, PLLC**
                        72 Guy Lombardo Avenue
                        Freeport, New York 11520
                        (516) 561-8580
                        gdwlawyers@gmail.com
                        *Attorneys for the Plaintiff*

# EXHIBIT 1

**GREEN DURCAN & WEINER, PLLC**
72 Guy Lombardo Avenue
Freeport, New York 11520
Gerald H. Green
William J. Durcan
Jeffrey K. Weiner
(516) 561-8580

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

RICHARD P. RIDER III

Plaintiff,

-against-

NASSAU COUNTY, NASSAU COUNTY POLICE DEPARTMENT
and NASSAU COUNTY CORRECTIONAL CENTER, OFFICER
JOHN DOE ONE, individually, OFFICER JOHN DOE TWO,
individually.

Defendants.

Index No.:2:17-cv-02583-LDW-SIL
Date Filed: May 1, 2017

**CIVIL RIGHTS COMPLAINT
WITH REQUEST FOR TRIAL BY
JURY**

Plaintiff Richard P. Rider III, by and through his attorneys, Green Durcan &

Weiner, PLLC, complains against Defendants and requests trial by jury as follows:

### I. INTRODUCTION

1.      This action is brought by Richard P. Rider III to vindicate profound

deprivations of his constitutional rights caused by police brutality and deliberate

indifference to his medical needs by the Nassau County Correctional Center.

2.      On February 6, 2016, Plaintiff was at his residence at 584 Yale Street,

Oceanside, New York ("the residence").Plaintiff rents the basement apartment in his

parents' home.

1

3.     At approximately 1 o'clock in the afternoon, the Defendant's mother, Donna Marie Rider ("mother"), noticed that Plaintiff's head was resting on his desk as he fell asleep after working for Duffy Installation all day. Plaintiff's mother mistook this for an overdose and contacted the authorities. Plaintiff has an Order of Protection with regard to using drugs and alcohol in the presence of his parents.

4.     Upon realizing Defendant Officers planned to take him into custody, Plaintiff panicked and fled the scene. He feared for his safety, as he had been subjected excessive force by police officers on a separate occasion—an incident, which included an officer stepping on Plaintiff's face and pulling a gun on Plaintiff's mother.

5.     When Plaintiff fled, he jumped over the balcony next to the stairs in his residence. One Defendant Officer followed him over the balcony; landed hard; and exclaimed that he had hurt his ankle.

6.     Plaintiff was pursued and then aggressively apprehended in a neighbor's backyard by two Defendant Officers. Defendant Officers shoved Plaintiff to the ground then maced him directly in the face. Defendant Officers proceeded to hold Plaintiff's head, face down, in a foot of snow. While Plaintiff struggled to breathe because of the snow and attempted to wipe the mace from his eyes, the Defendant Officers commanded him to put his hands behind his back though the means by which they pinned him down made it impossible to do so. While pinned down, Defendant Officers proceeded to punch Plaintiff in the neck and head repeatedly while Plaintiff screamed in pain, proclaiming his innocence. One Officer violently kneed Plaintiff twice in the back. Plaintiff surrendered to Defendant Officers almost immediately after he had been apprehended. Plaintiff pled with Defendant Officers to stop the assault but to no avail.

2

7. Defendant Officers noticed that they were being videoed by Plaintiff's uncle and brother and stopped the assault.

8. Plaintiff was in extreme pain due to the use of force during his arrest, which had exacerbated prior injuries, including a previously broken collarbone. Plaintiff requested repeatedly to be taken to the hospital. Instead, Defendant Officers drove him directly to the precinct where he was forced to sit, in pain, in a cell for about two hours before he was driven to the Nassau University Medical Center, ("NUMC").

9. While at NUMC, Plaintiff informed the medical staff that his injuries were the result of a beating by police officers. Indifferent to his pain because he was under arrest, medical staff simply handed him a Motrin and promptly dismissed him back into police custody. Plaintiff was still experiencing extreme pain.

10. Plaintiff was then driven to the Police Station where he repeatedly requested to be taken back to the hospital for tests. He was finally taken back the following morning where, again, he was given a Motrin by a nurse and told, by a doctor, "I don't care what happens to him," because Defendant Officers told the doctors that Plaintiff had fled. Plaintiff was given no additional treatment and then taken to arraignment.

11. Plaintiff was charged with assaulting three Defendant Officers, resisting arrest; violating a court order; and contempt of court. Plaintiff was then taken to Nassau County Correctional Facility.

12. Plaintiff, still in extreme pain, was given no follow up examinations and/or testing while in police custody for the next six weeks.

3

13. All of the felony charges were dismissed. Plaintiff eventually pled guilty to one count of assault for recklessly causing a physical injury despite having seen the officer in question exhibiting no such injury just hours after the incident.

14. Plaintiff seeks damages for violations of claimant's civil rights by the defendants for their use of excessive force in violation of his Fourth Amendment rights and for deliberate indifference to the Plaintiff's medical needs in violation of his rights under the Fourteenth Amendment. Plaintiff continues to suffer physical and emotional damage.

## II. JURISDICTION, VENUE, AND NOTICE

15. This action arises under the Constitution and laws of the United States, and is brought pursuant to the 42 U.S.C. §1983and a violation of the plaintiff's Fourth Amendment right to be free from an unreasonable seizure and the 14th Amendment which provides that deliberate indifference of serious medical needs of a pre-trial detainee is a form of punishment imposed on persons not convicted of a crime. *Bell v. Wolfish*, 441 U.S. 520 (1979). The Jurisdiction of this Court is invoked pursuant to 28 U.S.C§§ 1331, 1343, 2201.

16. This case is instituted in the United States District Court for the Eastern District of the State of New York pursuant to 28 U.S.C §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## III. PARTIES

17. At all times relevant hereto, Plaintiff Richard P. Rider was a resident of Nassau County in the State of New York and a citizen of the United States of America.

4

32. At all times relevant hereto, Defendant Officer John Doe I was a citizen of the United States and a resident of the State of New York and was acting under color of state law in this capacity as a law enforcement officer employed by Defendant Nassau County and/or Nassau County Police Department. Defendant Officer John Doe I is sued individually pursuant to 43 U.S.C. §1983.

33. At all times relevant hereto, Defendant Officer John Doe II was a citizen of the United States and a resident of the State of New York and was acting under color of state law in this capacity as a law enforcement officer employed by Defendant Nassau County and/or the Nassau County Police Department. Defendant Officer John Doe II is sued individually pursuant to 43 U.S.C. §1983.

34. Nassau County is a New York municipal corporation and is the legal entity responsible for itself and for the Nassau County Police Department and the Nassau County Correctional Facility. This Defendant is also the employer of the individual Defendant Officers and is a proper entity to be sued under 42 U.S. Code § 1983.

36. Defendant Nassau County Correctional Center ("NCCC") is a legal entity under the supervision and control of Nassau County and the Nassau County Sheriff's Department. It is also the employer of the negligent medical staff and is a proper entity to be sued under the 14th Amendment for deliberate indifference to the plaintiff's medical needs.

39. The Defendant County is also properly sued under 42 U.S. Code § 1983 for the challenged delegated final decisions of Defendant John Doe I and II in his official capacity as an officer of the Nassau County Police Department, and for those of any final

5

delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

40.     The Defendant County is also properly sued under 42 U.S. Code § 1983 for the challenged delegated final decisions of Defendant John Doe II in his official capacity as an officer of the Nassau County Police Department, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

## IV.     STATEMENT OF FACTS

41.     Plaintiff incorporates all of the preceding paragraphs, including the allegations, as if they were fully set forth again at this point.

42.     At the time the police arrived at his residence, Plaintiff was calmly sitting in his living room.

43.     A police officer of the Nassau County Police Department ("NCPD") made initial contact with Plaintiff during the visit to the residence and was unnecessarily verbally aggressive.

44.     A police officer of the NCPD stated that Plaintiff was not under arrest.

45.     A police officer of the NCPD gave no reason for the subsequent arrest.

46.     Plaintiff was unarmed.

47.     Officers had ample time to ascertain that Plaintiff was non-violent and calm in demeanor.

48.     Officers could easily ascertain that Plaintiff's parents were in no danger as they were sipping coffee and discussing classic cars.

6

49.     Officers arrested Plaintiff suddenly and without reason when he was behaving in a calm and rational manner in his own residence.

50.     Despite the winter weather, Plaintiff was denied the opportunity to take so much as a sweatshirt from his residence before being made to go out into the cold.

51.     Plaintiff was shocked and panicked having experienced police brutality in the past and fled from his residence.

52.     Plaintiff audibly surrendered and pleaded with Defendant Officers, who outmanned him two to one, to stop assaulting him but they refused to stop punching him as they pinned his body and face down into the snow.

53.     Plaintiff sustained serious physical injury after the assault by police but was not taken to the ambulance for, at the very least, first aid even though the emergency vehicle remained parked in front of the residence.

54.     Plaintiff was again denied medical treatment after being assaulted by Defendant Officers as he was not taken to the hospital despite his repeated requests but rather taken to the precinct and made to wait for hours before being taken to hospital.

55.     When finally taken to the hospital, Plaintiff was given Motrin and released with no testing or any further examination whatsoever after medical staff and Defendant Officers expressed nothing but indifference due to the reasons leading to Plaintiff's need for medical attention.

56.     Plaintiff was taken back to the jail and left to remain in pain over night despite repeated requests to be taken back to the hospital for medical attention.

57.     When Plaintiff was taken to hospital the following morning, he was again treated with indifference due to the fact that the officer who drove him to the hospital

7

disclosed the nature of his alleged offense to the medical staff which created indifference toward Plaintiff and again left him without proper treatment.

58.     Plaintiff was falsely charged with assaulting three Defendant Officers, among other felony charges, despite being a victim of assault himself.

59.     Plaintiff remained in police custody, in extreme pain, for six weeks wherein he did received no additional treatment for physical and/or emotional distress.

60.     Since his acceptance of a plea and subsequent release, Plaintiff has suffered routine harassment from the Nassau County Police as a result of his decision to file complaint.

61.     As a direct result of his brutal arrest, incarceration and subsequent harassment, Plaintiff suffers extreme anxiety attacks and residual pain.

62.     Plaintiff has lost significant wages and reduced quality of overall life as a result of the physical pain and emotional distress inflicted upon him by Defendant Officers and indifferent medical staff.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 – Deprivation of Civil Rights pursuant to 42 U.S.C §1983: To wit use of excessive force during an arrest a violation of plaintiff's Fourth Amendment rights.**

63.     Plaintiff hereby incorporates all other paragraphs of this Complaint as it fully sets forth herein.

64.     42 U.S.C. § 1983 provides in relevant part that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

8

65.     Plaintiff in this action is a citizen of the United States and all of the Defendant Officers to this claim are persons for purposes of 42 U.S.C. § 1983.

66.     All individual Defendant Officers to this claim at all times relevant hereto, were acting under the color of state law in their capacity as Nassau County police officers and their acts or omissions were conducted within the scope of their official duties or employment.

67.     At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

69.     Any reasonable police officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at the time.

70.     Defendant Officers actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Fourth Amendment rights of Plaintiff.

71.     That while the plaintiff was pinned face down in the snow by the two defendant officers and unable to move his hand, unreasonable force was applied while he was maced, punched and kneed in the back prior to being placed under arrest.

72.     Defendant Officers unlawfully seized Plaintiff by means of objectively unreasonable and excessive physical force, thereby violating his rights under the Fourth Amendment.

73.     Nether of the Defendant officers took reasonable steps to protect Plaintiff from the objectively unreasonable force of other Defendant officer despite being in a

9

position to do so. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable force of each officer.

76. The acts or omissions of all individual Defendant Officers were moving forces behind Plaintiff's injuries.

77. These individual Defendant Officers acted in concert and joint action with each other.

80. The Defendant Officers to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their action pertaining to Plaintiff.

81. As a proximate result of Defendant Officers' unlawful conduct, Plaintiff has suffered actual physical and emotional damages, in amounts to be determined at trial. As a further result of the Defendant Officers' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses in amounts to be established at trial.

82. On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1983, in that the actions of each of these individual Defendant Officers have been taken maliciously, willfully or with a reckless or wonton disregard of the constitutional rights of Plaintiff.

10

## SECOND CLAIM FOR RELIEF
## Violation of 42 U.S.C. § 1983 – Deliberate Indifference to Plaintiff's Medical Needs in Violation of the Fourteenth Amendment.

102. Plaintiff hereby incorporates all other paragraphs of this Complaint as it fully sets forth herein.

103. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

104. That as a result of the excessive use of force by the defendant officers the plaintiff was in extreme pain.

105. That despite the availability of an ambulance at the scene of the arrest plaintiff's request to be taken to the hospital was denied by the arresting officers.

106. That finally the plaintiff was taken to NUMC and seen by the medical staff where he complained of extreme pain in the neck and back. When the medical staff learned that his injuries were the result of injuries sustained by the police they acted with deliberate indifference by failing to fully examine him but rather they gave him some Motrin and told the police to take him away.

107. After leaving the hospital the plaintiff was taken to the Mineola pens where he was kept overnight. All night long he complained of extreme pain and requested to be brought back to the hospital.

108. The following day, after being unable to sleep due to the pain, he was brought back to the hospital and seen by a Doctor who gave him some more Motrin and

11

told police to "get him out of here" and that he did not care what happened to the plaintiff.

109. The plaintiff complained to the medical staff that they had done nothing to treat him and that he was in extreme pain and they replied "tough well you should not have run" which was a reference to the fact that he had fled the police.

110. After the second hospital visit plaintiff was taken to arraignment and then held at the NCCC for about six weeks.

111. During the six week period of incarceration at NCCC the plaintiff made numerous requests for medical treatment for his extreme pain and inability to sleep. He was only seen twice by the medical staff and only given Motrin. When he complained the staff told him not to get arrested and he won't have to deal with this.

115. As a direct result of Defendant Officers' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

116. As a result of a lack of training and supervision and indifference to the medical needs of its inmates, the health care provider for NCCC is being sued by the Attorney General of New York, due to the death of twelve inmates over the past 6 years, five of which resulted from inadequate care.

117. Additionally Nassau County Auditors found the following in its review of the NCCC medical provider: Key Findings:

- The Correctional Center failed to provide adequate oversight to ensure that Armor was in compliance with its contract with the County. The Correctional Center did not have a medical professional on staff to oversee Armor. They also did not have a physician employed by the County which was contrary to

12

NYS Correction Law. Armor experienced a 60% employee turnover rate at the Correctional Center during 2014-2015. For example, nursing and doctor turnover was at 63.5% and 50% respectively. High turnover rate is of significant concern.

- The lack of a Health Contract Administrator resulted in the Correctional Center failing to assess performance indicators and assess associated penalties as provided for in the contract, including failing to obtain NCCHC accreditation.
- Armor failed to adequately document required employee background and reference checks. When asked, Armor could not produce documentation evidencing that background checks were performed and that employees were cleared for hire. Armor could only provide reference documentation for 6 of 16 (38%) selected employees.
- Armor's manual medical records were inadequate and did not comply with Federal requirements. Armor is using paper forms to record the distribution of medication to patients at the Correctional Center which is inefficient and time consuming and can lead to errors.
- Armor was unable to provide a listing of contractually required medical equipment purchases. If Armor's services are terminated, they will maintain ownership of the medical equipment, possibly affecting the transition of inmate medical care.

116. On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained ongoing physical and emotional injuries. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

117. Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress the above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the Internal Affairs Bureau of failing to investigate or appropriately handle complaints of the same, which Defendant Officers have no intention for voluntarily correcting despite obvious need and requests for such correction.

13

## VI.   PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of

the Defendant Officers and grant:

a. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

b. Economic losses on all claims allowed by law;

c. Special damages in an amount to be determined at trial;

d. Punitive damages on all claims allowed by law against individual Defendant Officers and in an amount to be determined at trial;

e. Attorneys; fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

f. Pre- and post-judgment interest at the lawful rate; and,

g. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

### PLAINTIFF REQUESTS A TRIAL BY JURY.

Respectfully submitted:

By: _____

Jeffrey K. Weiner, Esq.

Green Durcan & Weiner, PLLC
*Attorneys for Plaintiff*
72 Guy Lombardo Avenue
Freeport, New York 11520
(516)561-8580
gdwlawyers@gmail.com

14